## Squier, Appellant, *v.* Grand Fraternity.

*Beneficial associations—Consolidation and merger—Exchange of certificates—Sharing in surplus fund.*

Where a beneficial association merges and consolidates with another beneficial association under an agreement by which the members of the first association may exchange their certificates for the certificates of the consolidated company, if they desire, or retain the old certificates under the original beneficiary contracts, which "shall remain intact, and be assumed by the consolidated society according to the terms of the constitution and laws of the original society," and subsequently the consolidated society issues a circular advising the members of the old society to exchange their certificates, by which they would become entitled to a credit on the new certificates, of a portion of a certain fund described as a surplus from the first society, and a member of the first society dies without having changed his certificate, and in default on payment of assessments, his beneficiary cannot claim that the assessments had been paid by credits on the surplus fund, in the absence of any evidence whatever that such surplus fund was applicable to the payment of assessments due by members of the first society who had not changed their certificates.

Argued Nov. 2, 1916.  Appeal, No. 284, Oct. T., 1916, by plaintiff, from judgment of C. P. No. 5, Philadelphia Co., Sept. T., 1913, No. 1917, for defendant n. o. v. in case of Lee W. Squier v. The Grand Fraternity.  Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ.  Affirmed.

Assumpsit for death benefits.  Before STAAKE, J.

The facts are stated in the opinion of the Superior Court.

At the trial the jury returned a verdict for the plaintiff for $1,192.  Subsequently judgment was entered for defendant n. o. v.

*Error assigned* was in entering judgment for defendant n. o. v.

*Joseph W. Shannon,* for appellant.—The plaintiff's brother, Burton O. Squier (the decedent), is entitled to have his equitable share of a certain fund, called by the officers and directors of the society a surplus fund, credited to the payment of his dues and assessments: Girard Life Ins. Co. v. Mut. L. Ins. Co., 97 Pa. 1; Matlack v. The Mut. Life Ins. Co. of N. Y., 180 Pa. 360; Murray v. Iron Hall, 9 Pa. Superior Ct. 89; Bannister v. Spring Garden Mut. Fire Ins. Co., 50 Pa. Superior Ct. 613; Crumpton v. Pittsburgh Council, 1 Pa. Superior Ct. 613; Eldred v. Hazlett, 33 Pa. 307; Stauffer v. Penn Mut. Fire Ins. Assn., 164 Pa. 199; Mentz v. Lancaster Fire Ins. Co., 79 Pa. 475.

*Russell Duane,* with him *William R. Newgeon,* for appellee.—The plaintiff is estopped from setting up the claim that his brother was entitled to a share of the Americus funds, he not having changed his certificate as required by the resolution: Louchheim v. Somerset B. & L. Assn., 25 Pa. Superior Ct. 325; Reel v. Elder, 62 Pa. 308; Eldred v. Hazlett, 33 Pa. 307; Stauffer v. Penn Mut. L. Ins. Assn., 164 Pa. 199.

OPINION BY HENDERSON, J., March 16, 1917:

This is an action on a beneficiary's certificate issued to Burton O. Squier January 11, 1899, by a fraternal organization known as the "Order of Americus," payable on the death of the insured to his brother, the plaintiff. In 1904 this society entered into an agreement of consolidation with a similar corporation known as "The Grand Fraternity." It was provided in the contract of consolidation entered into between the two organizations that the consolidated society should operate under the charter and name of "The Grand Fraternity," "adopting and putting into effect its constitution, laws, rules and regulations except in so far as it may be necessary to carry out the contracts of members of the Order of Americus, which contracts are to be kept in force, de-

termined and governed by the terms and conditions specified therein in accordance with the book of laws of the Order of Americus in force at the time this consolidation goes into effect." It was further provided in the same contract that "the insurance or beneficiary contracts of all members of each of the societies, parties hereto, shall remain intact and be assumed by the consolidated society, according to the terms and conditions of said contracts and the constitution, laws, rules and regulations of each society existing and in force at the time this consolidation takes effect." By virtue of the consolidation the defendant assumed and agreed to pay "all benefits payable under the said beneficiary certificates of the said Order of Americus in the manner and under the conditions prescribed in the constitution and by-laws, rules and regulations of the said Order of Americus in force at and immediately before the said consolidation." Provision was made for the surrender of certificates issued by the Order of Americus and the acceptance in lieu thereof of certificates of The Grand Fraternity after which membership in the Order of Americus ceased and all contract relations of the member were transferred to The Grand Fraternity. The rates of assessment were higher in the latter organization than in the Order of Americus and some of the members of that order did not surrender their beneficiary certificates and take out new certificates from The Grand Fraternity, one of whom was Burton O. Squier. The status of such members was that their rights under their beneficiary certificates were to be worked out in accordance with the laws of the Order of Americus in force at the time of the consolidation. Burton O. Squier failed to pay his dues for the month of October, 1912, and was for that reason suspended for nonpayment. He died December 6, 1912. On Dec. 18, 1912, the plaintiff sent to the defendant a check for the dues of October, November and December, amounting to $4.04. This check was returned with the information that Burton O. Squier had been

suspended in October for nonpayment of dues. The fact of the nonpayment of dues and the suspension is not controverted but the plaintiff seeks to avoid the effect of the suspension by showing that The Grand Fraternity received a fund from the Order of Americus amounting to $40,587, to a part of which the insured was entitled; that this was applicable to the payment of dues and that he was therefore wrongly suspended. To support this position reliance is placed on a circular letter issued by the defendant dated August 1, 1908, in which members holding certificates of The Order of Americus were advised to change their certificates to certificates of The Grand Fraternity, by doing which they would become entitled to a credit on the new certificates of a proportion of this fund described as "The Americus Surplus." The reason given for such change of certificate was that the rate of assessment on the members holding the Order of Americus certificates was so low that the insurance could not be maintained. It is urged that the defendant, having admitted the possession of a "surplus" fund, is now estopped from denying the possession of such a fund and that the share of Burton O. Squier therein was more than sufficient to pay the October, November and December assessments due by him and which the defendant was bound to appropriate for that purpose. It will be seen from an examination of the circular that the defendant only proposed to give a credit from this fund to former members of the Order of Americus who surrendered their Americus certificates and took out new certificates in The Grand Fraternity at a higher rate of assessment. There is nothing in the letter from which it may be concluded that the fund to which reference was made was one from which the holders of certificates of the Order of Americus were entitled to a distribution or an appropriation on account of assessments. Whatever rights the holders of Americus certificates had were to be worked out in accordance with the laws of the Order of Americus as that society was organized and conducted

before the consolidation. Unless it is made to appear that a fund existed of which Burton O. Squier was entitled to a distributive share there was nothing with which the assessments could be paid. The evidence does not show that the $40,587 which The Grand Fraternity took over was a surplus distributive among the Order of Americus certificate holders. The defendant offered to prove that there was no surplus whatever in that company but this offer on objection of the plaintiff was excluded by the learned trial judge. However, it was the burden of the plaintiff to show that there was a fund applicable to the payment of the assessments and this does not appear in the evidence. There was a provision in the book of laws of the Order of Americus for the accumulation of a surplus fund as provided in section 93 but the evidence does not show that that fund ever had an existence. The section declares that an equalization sum shall be accumulated by the appropriation of 20 per cent. of the monthly income on each beneficial certificate which fund is to be used only to pay Supreme Council dues on life membership certificates and death losses in excess of the provision made in the Mortuary Fund. In case the equalization fund should grow to exceed five per cent. of the face value of the certificates in force the excess was to constitute a surplus fund the annual amount of which shall be credited pro rata to all members in good standing whose beneficiary certificates were five years old or more. This is the only provision for a surplus fund found in the Order of Americus laws. It only exists contingently and there was no testimony that such a fund existed at the consolidation or ever had existed. It could only exist when the equalization fund exceeded five per cent. of the face value of the certificates outstanding and no attempt was made to show that such a fund had been created. The Americus surplus referred to in the letter cannot be presumed to be the equalization fund in excess of five per cent. of the liabilities on certificates and until it is made to appear that the fund ex-

isted which was applicable to the payment of assessments the defendant's liability is not established. The plaintiff's case is not aided by the evidence that some of the members of the Order of Americus who surrendered their certificates and took out new certificates in The Grand Fraternity received a credit on their new certificates for assessments. The case does not disclose what authority The Grand Fraternity had to take such action but Burton O. Squier had not put himself in the position of those who accepted the new certificates and became bound to conform to the law of The Grand Fraternity as to the amount of assessments to be paid. The certificate involved in this action was one issued by the Order of Americus and is to be governed by the law of that order as was expressly provided in the contract of consolidation. There is no principle of estoppel available to aid the plaintiff. There was no admission by the defendant that the fund called the "surplus fund" was applicable to the payment of assessments of those who still retained their certificates in the Order of Americus nor is there any evidence that Burton O. Squier acted on the admission of a surplus or that he was in any way prejudiced by an assurance that his assessment would be paid. On the contrary, the evidence is that he intended to pay the assessment but for some reason omitted to do so. The letter of the plaintiff to the defendant, "Exhibit H," makes this clear. The insured was not adversely affected, therefore, by the issuing of the circular. He could have brought himself within its provisions by surrendering his Americus certificate and accepting one from The Grand Fraternity with its new obligations but there is a lack of proof that he had any standing as a holder of the Americus certificate to take from the fund of that order any sum to be applied on the payment of assessments.

The judgment is therefore affirmed.